**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| THE HANOVER INSURANCE GROUP, INC. AND THE HANOVER INSURANCE COMPANY<br><br>Plaintiffs,<br><br>v.<br><br>INTELLECTUAL VENTURES MANAGEMENT, LLC, INTELLECTUAL VENTURES I LLC, INTELLECTUAL VENTURES II LLC, INVENTION INVESTMENT FUND I, LP AND INVENTION INVESTMENT FUND II, LLC<br><br>Defendants. | Civil Action No.<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiffs The Hanover Insurance Group, Inc. and The Hanover Insurance Company (collectively, "Hanover") bring this Complaint for Declaratory Judgment against Defendants Intellectual Ventures Management, LLC, Intellectual Ventures I LLC, Intellectual Ventures II LLC, Invention Investment Fund I, LP, and Invention Investment Fund II, LLC (collectively, "IV") based on IV's unjustified and unfounded allegations that Hanover's operations directly and/or indirectly infringe certain patents purportedly held by IV. Hanover alleges as follows:

**NATURE OF THE ACTION**

1. This is an action under the patent laws of the United States, Title 35, United States Code, seeking a declaratory judgment against IV based on its accusations that Hanover infringes certain of its patents, including U.S. Patent Nos. 8,332,844 (the "'844 Patent"), 8,352,584 (the "'584 Patent"), and RE48,894 (the "'894 Patent") (collectively, the "Asserted Patents"), as set

forth in Counts I–III, below.

2. On information and belief, Intellectual Ventures II LLC is the assignee of the '844 Patent and the '584 Patent.

3. On information and belief, Intellectual Ventures II LLC possess all rights, including enforcement, in the '844 Patent and the '584 Patent.

4. On information and belief, Intellectual Ventures I LLC is the assignee of the '894 Patent.

5. On information and belief, Intellectual Ventures I LLC possess all rights, including enforcement, in the '894 Patent.

## PARTIES

6. On information and belief, Defendant Intellectual Ventures Management, LLC ("IVM") is a Delaware limited liability company, with its principal place of business located in Bellevue, Washington.

7. On information and belief, Defendant Intellectual Ventures I LLC ("IV I") is a Delaware limited liability company, with its principal place of business located in Bellevue, Washington.

8. On information and belief, Defendant Intellectual Ventures II LLC ("IV II") is a Delaware limited liability company, with its principal place of business located in Bellevue, Washington.

9. On information and belief, Invention Investment Fund I, LP ("IIF I") is a Delaware limited partnership, with its principal place of business located in Bellevue, Washington.

10. On information and belief, Invention Investment Fund II, LLC ("IIF II") is a Delaware limited liability company, with its principal place of business located in Bellevue,

Washington.

11.     On information and belief, the IV defendants have conspired to monetize the Asserted Patents, including but not limited to licensing the Asserted Patents and/or engaging in litigation relating to the Asserted Patents.

12.     On information and belief, the IV defendants are owned and/or operated by a common entity, or are otherwise under common control.

13.     On information and belief, the IV defendants engage in the practice of acquiring and monetizing intellectual property rights.

14.     On information and belief, the IV defendants engage in a monetization strategy of first accusing a party of infringing certain acquired patents and requesting an accused party licenses IV's patent portfolio.

15.     On information and belief, when the IV defendants are unsuccessful in their license requests, IV file a complaint alleging infringement of the acquired patents.

16.     The Hanover Insurance Group, Inc. is a Delaware corporation, with its principal place of business located at 440 Lincoln Street, Worcester, Massachusetts 01653-0002.

17.     The Hanover Insurance Company is a New Hampshire corporation, with a principal place of business located at 440 Lincoln Street, Worcester, Massachusetts 01653-0002.

## JURISDICTION AND VENUE

18.     Hanover repeats and realleges the allegations set forth above.

19.     This Declaratory Judgment Complaint includes counts for declaratory relief under the patent laws of the United States, 35 U.S.C. §§ 1, et seq.

20.     Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, Hanover seeks a declaration from the Court that Hanover does not infringe any valid and enforceable claim

in the Asserted Patents, described in the following paragraphs.

21.    This Court has subject matter jurisdiction over the claims alleged in this action under 28 U.S.C. §§ 1331, 1338, 2201, and 2202 because this Court has exclusive jurisdiction over declaratory judgment claims arising under the patent laws of the United States pursuant to 28 U.S.C. §§ 1331, 1338, 2201, and 2202.

22.    This Court can provide the declaratory relief sought in this Declaratory Judgment Complaint because an actual case and controversy exists between the parties within the scope of this Court's jurisdiction pursuant to 28 U.S.C. § 2201.

23.    An actual case and controversy exists because the IV defendants (1) have accused Hanover of infringing the Asserted Patents and threatened to take the steps necessary to protect IV's patent rights; (2) have communicated allegations regarding what conduct by Hanover allegedly infringes the Asserted Patents and have demanded from Hanover a licensing payment of $2.75 million; and (3) have a history of litigation against accused infringers who are similarly situated to Hanover.  As discussed below, Hanover does not infringe and has not infringed any valid and enforceable claim of the Asserted Patents; and therefore, Hanover has the right to engage in the complained-of activity, to the extent Hanover even conducts the complained-of activity at all.

24.    IV's actions have created a real, immediate, and justiciable dispute between Hanover and IV as to whether Hanover infringes the Asserted Patents.

25.    On February 4, 2025, Steve Joroff, Licensing Executive at IV, contacted Hanover on behalf of IV to "inquire about [Hanover's] preferred method of contact regarding patents for the Hanover Insurance Group." Mr. Joroff's followed-up on IV's behalf with subsequent communications that requested Hanover engage in licensing discussions.  Mr. Joroff's February 4,

- 4 -

2025 email is copied below.

From: Steve Joroff <sjoroff@intven.com>
Sent: Tuesday, February 4, 2025 2:56 PM
To: dkerrigan@hanover.com <dkerrigan@hanover.com>
Cc: hberenson@hanover.com <hberenson@hanover.com>; hberenson@hanover.com / <harrisberenson@hanover.com>; bhopkins@hanover.com <bhopkins@hanover.com>; ajensen@hanover.com <ajensen@hanover.com>
Subject: Guidance on Reaching Out to The Hanover Insurance Group About Patents

Dear Dennis,

I hope this message finds you well.

I am Steve Joroff, Licensing Executive at Intellectual Ventures (IV). At IV, I lead a team responsible for negotiating patent license agreements across various industries, including insurance.

I'm reaching out to inquire about your preferred method of contact regarding patents for The Hanover Insurance Group. Intellectual Ventures has an active licensing program, and our interest in engaging with The Hanover Insurance Group is part of this broader initiative. We've already licensed numerous leading insurance companies, and our portfolio—consisting of approximately 5,000 patents—includes technologies relevant to the insurance sector, such as cloud computing, networking, security, storage, and open-source software.

If you'd prefer, I'm happy to arrange a brief call to discuss this matter further.

Please let me know how you'd like me to proceed. I appreciate any guidance you can provide and look forward to hearing from you.

Best,

**Steve Joroff**

Intellectual Ventures
E - sjoroff@intven.com
O - 425.247.2280

26.     Mr. Joroff stated IV "has an active licensing program" and had "interest in engaging with The Hanover Insurance Group [as] part of this broader initiative." Mr. Joroff also represented that IV's portfolio consists of approximately 5,000 patents, including technologies relevant to the insurance sector such as "cloud computing, networking, security, storage, and open-source software."

27.     On March 17, 2025, Mr. Joroff, on behalf of IV, sent an email "to connect and discuss Intellectual Ventures, our patent portfolio, and its relevance to the insurance industry." Mr. Joroff also represented that IV "remain open to engaging in direct, constructive discussions with The Hanover Insurance to reach a resolution without the need for escalation." Mr. Joroff's March 17, 2025 email is copied below.

**From:** Steve Joroff <sjoroff@intven.com>
**Sent:** Monday, March 17, 2025 12:04 PM
**To:** KERRIGAN, DENNIS F <DKERRIGAN@HANOVER.COM>
**Cc:** BERENSON, HARRIS E. <HBERENSON@HANOVER.COM>; hberenson@hanover.com / <harrisberenson@hanover.com>; bhopkins@hanover.com; JENSEN, AMY K <AJENSEN@HANOVER.COM>
**Subject:** Re: Guidance on Reaching Out to The Hanover Insurance Group About Patents

Dear Dennis,

I hope you're doing well. I wanted to follow up again, as I haven't heard back from you regarding my previous outreach. I would still welcome the opportunity to connect and discuss Intellectual Ventures, our patent portfolio, and its relevance to the insurance industry.

Since my last note, there have been some significant developments:

- Two key patents—U.S. Patent No. 9,123,722 and U.S. Patent No. 10,215,582—recently completed ex parte reexamination proceedings before the USPTO. In both cases, the USPTO issued a Notice of Intent to Issue a Reexamination Certificate (NIRC), reaffirming the validity of the claims and further strengthening their enforceability.  See attached.
- IV has also recently filed two new patent litigations against **Nationwide Mutual Insurance** and **The Bank of New York Mellon**, following their refusal to engage in licensing discussions. Additional litigations are anticipated for other institutions unwilling to negotiate.
- To date, 35 financial institutions have entered into licenses with IV, reflecting broad industry recognition of the strength of our portfolio.

That said, we remain open to engaging in direct, constructive discussions with The Hanover Insurance to reach a resolution without the need for escalation.

Please let me know if you'd be open to scheduling a meeting. I'm happy to provide additional information and coordinate a convenient time.

Looking forward to your response.

Best,
**Steve Joroff**
Intellectual Ventures

28.    This communication also references that "IV has also recently filed two new patent litigations against Nationwide Mutual Insurance and The Bank of New York Mellon, following their refusal to engage in licensing discussions.  Additional litigations are anticipated to other institutions unwilling to negotiation."

29.    On May 8, 2025, Mr. Joroff, on behalf of IV, sent an email sharing three claim charts "detailing The Hanover Insurance Group, Inc. use of Kubernetes, Docker and Apache Kafka open source software." Mr. Joroff's May 8, 2025 email is copied below.

**From:** Steve Joroff <sjoroff@intven.com>
**Sent:** Thursday, May 8, 2025 9:18 AM
**To:** DKERRIGAN@HANOVER.COM <dkerrigan@hanover.com>
**Cc:** hberenson@hanover.com <hberenson@hanover.com>; harrisberenson@hanover.com <harrisberenson@hanover.com>; bhopkins@hanover.com <bhopkins@hanover.com>; ajensen@hanover.com <ajensen@hanover.com>; Michelle Macartney <mmacartney@intven.com>
**Subject:** Intellectual Venture Claim Charts for The Hanover Insurance Group, Inc.

Hi Dennis,

As we continue to wait to hear from your outside counsel, we prepared 3 claim charts detailing The Hanover Insurance Group, Inc. use of Kubernetes, Docker and Apache Kafka open source software.
Please see the attached ZIP file.
We would be happy to present this material to you or your outside counsel at your convenience.


Best,

**Steve Joroff**

Intellectual Ventures
E - sjoroff@intven.com
O - 425.247.2280

30. IV's first claim chart includes allegations that Hanover infringes claim 7 of the '844 Patent through Hanover's use of the open source software Docker. This claim chart is marked "IV PROPRIETARY – SUBJECT TO 408 (CONFIDENTIAL SETTLEMENT COMMUNICATION)" (the "'844 Claim Chart").

31. IV's second claim chart includes allegations that Hanover infringes claim 1 of the '584 Patent through Hanover's use of the open source software Kubernetes. This claim chart is marked "IV PROPRIETARY – SUBJECT TO 408 (CONFIDENTIAL SETTLEMENT COMMUNICATION)" (the "'584 Claim Chart").

32. IV's third claim chart includes allegations that Hanover infringes claim 8 of the '894 Patent through Hanover's use of the open source software Apache Kafka. This claim chart is marked "IV PROPRIETARY – SUBJECT TO 408 (CONFIDENTIAL SETTLEMENT COMMUNICATION)" (the "'894 Claim Chart").

33. On November 7, 2025, Mr. Joroff, on behalf of IV, sent an email stating that "Intellectual Ventures (IV) requires The Hanover Insurance Group to secure a license for our patent portfolio." Mr. Joroff also requested a one-time license fee for a worldwide license of $2.75

million.  Mr. Joroff also stated on behalf of IV that "[w]e continue to prioritize resolution through

direct licensing discussions and remain open to constructive engagement."  Mr. Joroff's November

7, 2025 email is copied below.

From: Steve Joroff <sjoroff@intven.com>
Sent: Friday, November 7, 2025 1:43 PM
To: DKERRIGAN@HANOVER.COM <dkerrigan@hanover.com>
Cc: hberenson@hanover.com <HBERENSON@HANOVER.COM>; harrisberenson@hanover.com <harrisberenson@hanover.com>; bhopkins@hanover.com <bhopkins@hanover.com>;
ajensen@hanover.com <ajensen@hanover.com>; Michelle Macartney <mmacartney@intven.com>
Subject: Re: Intellectual Venture Claim Charts for The Hanover Insurance Group, Inc.

Dear Dennis,

I think it's important to share some recent and favorable IPR outcomes (attached) involving several IV-managed patents in the open-source software space. In each case, the Patent
Trial and Appeal Board denied institution, finding the petitioners failed to demonstrate a reasonable likelihood of success on any claim. These results continue a strong trend
confirming the validity and strength of the IIF Portfolio.

While we understand the inclination for some companies to wait on pending IPRs to conclude before engaging meaningfully in licensing discussions, these recent favorable
outcomes shine light on the risk associated with this approach, as the patents that survive such proceedings emerge stronger than before.

Intellectual Ventures (IV) requires The Hanover Insurance Group to secure a license for our patent portfolio. Based on Hanover's reported U.S. revenue of $6 billion, the proposed
one-time license fee for a worldwide license is $2.75 million. If this revenue figure is inaccurate, please let me know, and we can adjust accordingly. For your reference, I've attached
additional pricing guidance and details.

We continue to prioritize resolution through direct licensing discussions and remain open to constructive engagement. Please have the appropriate person from Hanover or your
outside counsel contact me at their earliest convenience.

Best,
**Steve Joroff**
Intellectual Ventures

34.     Mr. Joroff's email also stated, on behalf of IV, that "[w]hile we understand the

inclination for some companies to wait on pending IPRs to conclude before engaging meaningfully

in licensing discussions, these recent favorable outcomes shine light on the risk associated with

this approach, as the patents that survive such proceedings emerge stronger than before."

35.     On March 30, 2026, Mr. Joroff, on behalf of IV, sent an email stating that IV have

"now shared claim charts, pricing, and supporting materials and offered multiple opportunities to

discuss next steps, yet we have not heard from Hanover or any outside counsel acting on your

behalf."  Mr. Joroff also stated that "IV does need to understand whether Hanover intends to

engage in a licensing discussion or whether we should assume that no response is forthcoming."

Mr. Joroff's March 30, 2026 email is copied below.

**From:** Steve Joroff <sjoroff@intven.com>
**Sent:** Monday, March 30, 2026 12:31 PM
**To:** KERRIGAN, DENNIS F <DKERRIGAN@HANOVER.COM>
**Cc:** BERENSON, HARRIS E. <HBERENSON@HANOVER.COM>; harrisberenson@hanover.com; bhopkins@hanover.com; JENSEN, AMY K <AJENSEN@HANOVER.COM>; Michelle Macartney <mmacartney@intven.com>
**Subject:** Re: Intellectual Venture Claim Charts for The Hanover Insurance Group, Inc.

Dennis,

We have now shared claim charts, pricing, and supporting materials and offered multiple opportunities to discuss next steps, yet we have not heard from Hanover or any outside counsel acting on your behalf.

At this stage, continued silence is difficult to reconcile with Hanover's earlier indication that counsel would be involved. IV does need to understand whether Hanover intends to engage in a licensing discussion or whether we should assume that no response is forthcoming.

Please confirm how Hanover would like to proceed.

Best,
**Steve Joroff**
Intellectual Ventures

36.    On April 6, 2026, Jonathan K. Waldrop of Kasowitz LLP, on behalf of IV, sent a letter by Federal Express to Hanover's address at 440 Lincoln Street, Worcester, Massachusetts, 01653, and via email to Dennis Kerrigan, the Executive Vice President and Chief Legal Officer of Hanover (the "Notice Letter"). IV's Notice Letter is attached as Exhibit A. IV's Notice Letter states that "IV does not authorize The Hanover or The Hanover's customers or partners to practice any of the above patents and/or other IV patent rights without a license. IV is willing to offer a patent license and remains open to business with The Hanover to negotiation such a license, either to the specifically referenced patents or to all or a subset of the IV patent rights."

37.    The IV defendants have a history of litigation against other parties similarly situated to Hanover and has asserted the Asserted Patents in patent litigation. In those litigations, the IV defendants have often engaged Waldrop and Kasowitz LLP to file and prosecute those lawsuits.

38.    IV, represented by Kasowitz LLP, filed suit in the Eastern District of Texas on November 15, 2023 and alleged, among other infringement allegations, that Comerica Incorporated's use of the Docker platform infringed the '844 Patent. *See Intellectual Ventures I LLC, et al. v. Comerica Incorporated*, No. 2:23-cv-00524 (E.D. Tex. November 15, 2023), Dkt. 1.

39.    IV, represented by Kasowitz LLP, filed suit in the Eastern District of Texas on November 15, 2023 and alleged, among other infringement allegations, that Liberty Mutual

Insurance Holding Company Inc. et al.'s use of the Docker platform infringed the '844 Patent. *See Intellectual Ventures I LLC, et al. v. Liberty Mutual Holding Company Inc. et al.,* No. 2:23-cv-00525 (E.D. Tex. November 15, 2023), Dkt. 1.

40.     IV, represented by Kasowitz LLP, filed suit in the Northern District of Texas on March 15, 2025 and alleged, among other infringement allegations, that The Bank of New York Mellon Corporation's use of the Docker platform and use of the Kubernetes platform infringed the '884 Patent and the '584 Patent, respectively. *See Intellectual Ventures I LLC, et al. v. The Bank of New York Mellon Corporation*, No. 3:25-cv-00631 (N.D. Tex. Mar. 15, 2025), Dkt. 1.

41.     IV, represented by Kasowitz LLP, filed suit in the Northern District of Texas on March 15, 2025 and alleged, among other infringement allegations, that Nationwide Mutual Insurance Company's use of the Docker platform infringed the '844 Patent. *See Intellectual Ventures I LLC, et al. v. Nationwide Mutual Insurance Company,* No. 3:25-cv-00632 (N.D. Tex. Mar. 15, 2025), Dkt. 1.

42.     IV, represented by Kasowitz LLP, filed suit in the Western District of Texas on February 24, 2026 and alleged, among other infringement allegations, that Deere & Company's use of the Docker platform and use of the Kubernetes platform infringed the '884 Patent and the '584 Patent, respectively. *See Intellectual Ventures I LLC, et al. v. Deere & Company*, No. 1:26-cv-00425 (W.D. Tex. Feb. 24, 2026), Dkt. 1.

43.     IV, represented by Kasowitz LLP, filed suit in the Northern District of Texas on March 27, 2026 and alleged, among other infringement allegations, that Government Employees Insurance Company's use of the Docker platform and use of the Kubernetes platform infringed the '884 Patent and the '584 Patent, respectively. *See Intellectual Ventures I LLC, et al. v. Government Employees Insurance Company*, No. 3:26-cv-00978 (N.D. Tex. Mar. 27, 2026), Dkt. 1.

44.    On information and belief, each of these lawsuits occurred after unsuccessful licensing negotiations between IV and the accused infringer, including after IV sent a notice letter substantially similar to the Notice Letter attached as Exhibit A.

45.    An actual case or controversy exists regarding if Hanover infringes the Asserted Patents because IV "requires" Hanover to secure a license to the Asserted Patents; identified accused technology, IV patents, and corresponding claims in the claim charts IV served; has provided a specific demand of $2.75 million; has communicated threatening statements referencing IV's desire to reach a resolution "without escalation" while referencing other lawsuit filed against institutions which did not engage in licensing discussions; and has historically exhibited a litigation strategy which involves emailing an institution to begin licensing discussions followed by issuing a demand letter substantially similar to IV's Notice Letter (Exhibit A) and following that demand by filing a complaint.

46.    Hanover does not design, make, or sell the open source software systems named Docker, Kubernetes, and Apache Kafka identified by IV as allegedly infringing IV's patents. Further, as Docker, Kubernetes, and Apache Kafka do not infringe any valid or enforceable claim of the asserted patents, Hanover does not require a license to the Asserted Patents.

47.    This Court has personal jurisdiction over IVM because, among other things, IVM has conducted business relating to licensing and enforcement of patents in the Commonwealth of Massachusetts as discussed in this complaint, establishing the requisite minimum contacts with Massachusetts.

48.    This Court has personal jurisdiction over IV I because, among other things, IV I has conducted business relating to licensing and enforcement of patents in the Commonwealth of Massachusetts as discussed in this complaint, establishing the requisite minimum contacts with

Massachusetts.

49. This Court has personal jurisdiction over IV II because, among other things, IV II has conducted business relating to licensing and enforcement of patents in the Commonwealth of Massachusetts as discussed in this complaint, establishing the requisite minimum contacts with Massachusetts.

50. This Court has personal jurisdiction over IIF I because, among other things, IIF I has conducted business relating to licensing and enforcement of patents in the Commonwealth of Massachusetts as discussed in this complaint, establishing the requisite minimum contacts with Massachusetts.

51. This Court has personal jurisdiction over IIF II because, among other things, IIF II has conducted business relating to licensing and enforcement of patents in the Commonwealth of Massachusetts as discussed in this complaint, establishing the requisite minimum contacts with Massachusetts.

52. Venue is proper in this District Court under 28 USC § 1391 because IVM, IV I, IV II, IIF I, and IIF II are subject to personal jurisdiction in this judicial district, and have directed their business, licensing, and enforcement activities at this judicial district, and a substantial part of the events giving rise to the claims occurred in this judicial district.

53. IVM, IV I, IV II, IIF I, and IIF II, by and through their representatives and on their own behalf, have conducted business relating to the licensing and enforcement of the Asserted Patents and other patents in IV's patent portfolio in Massachusetts, including by offering specific terms to Hanover in Massachusetts to license the Asserted Patents and other patents in the IV patent portfolio, by accusing Hanover of infringing the Asserted Patents, and by asserting that litigation will be pursued against companies alleged to infringe who do not agree to license the

Asserted Patents, all with full knowledge that Hanover is an entity having its principal place of business located in Massachusetts. In addition, certain IV defendants have filed patent infringement actions in this district against others.

**THE ASSERTED PATENTS**

54. The '844 Patent is titled "Root image caching and indexing for block-level distributed application management" and was issued on December 11, 2012. The '844 Patent names Pradip Kulkarni, Mukul Kumar, Adhir Potdar, Richard Au, and Tung Nguyen as inventors. On information and belief, the '844 Patent is currently assigned to IV II. A true and correct copy of the '844 Patent is attached as Exhibit B.

55. The '584 Patent is titled "System for hosting customized computing clusters" and was issued on January 8, 2013. The '584 Patent names Jeffrey B. Franklin as inventor. On information and belief, the '584 Patent is currently assigned to IV II. A true and correct copy of the '584 Patent is attached as Exhibit C.

56. The '894 Patent is titled "Disaggregated resources and access methods" and was issued on January 11, 2022. The '894 Patent names Thomas Earl Ludwig and Mark Adams as inventors. The '894 Patent is a reissued of Patent No. 8,819,092 which was issued on August 16, 2005. On information and belief, the '894 Patent is currently assigned to IV I. A true and correct copy of the '894 Patent is attached as Exhibit D.

**COUNT I: NON-INFRINGEMENT OF THE '844 PATENT**

57. Hanover repeats and realleges the allegations set forth above.

58. The IV defendants have alleged that IV requires Hanover to license IV's patent portfolio, including the '844 Patent, and intends to file suit against Hanover if Hanover does not obtain a license.

59.     The IV defendants have alleged that the third-party open-source software "Docker" (the "First Accused System") infringes at least claim 7 of the '844 Patent.

60.     As a result, there is an actual, justiciable, substantial, and immediate controversy between Hanover and IV regarding whether Hanover has infringed and/or continues to infringe the '844 Patent.

61.     Hanover does not make, use, offer to sell, or sell any product and or/system within the United States (including the First Accused System), or import into the United States any product and/or system (including the First Accused System) in a manner that infringes the '844 Patent.

62.     As such, Hanover does not directly infringe any valid or enforceable claim of the '844 Patent, either literally or under the doctrine of equivalence.

63.     Likewise, at least because there is no direct infringement, Hanover does not induce infringement of the '844 Patent or otherwise contribute to infringement of the '844 Patent.

64.     Pursuant to the Federal Declaratory Judgment Act, 27 U.S.C. § 2201 et seq., Hanover seeks a declaration that Hanover (including through its use of the First Accused System) does not infringe the '884 Patent.

### COUNT II: NON-INFRINGEMENT OF THE '584 PATENT

65.     Hanover repeats and realleges the allegations set forth above.

66.     The IV defendants have alleged that IV requires Hanover to license IV's patent portfolio, including the '584 Patent, and intends to file suit against Hanover if Hanover does not obtain a license.

67.     The IV defendants have alleged that the third-party, open-source software "Kubernetes" (the "Second Accused System") infringes at least claim 1 of the '584 Patent.

- 14 -

68.    As a result, there is an actual, justiciable, substantial, and immediate controversy between Hanover and IV regarding whether Hanover has infringed and/or continues to infringe the '584 Patent.

69.    Hanover does not make, use, offer to sell, or sell any product and or/system within the United States (including the Second Accused System), or import into the United States any product and/or system (including the Second Accused System) in a manner which infringes the '584 Patent.

70.    As such, Hanover does not directly infringe any valid or enforceable claim of the '584 Patent, either literally or under the doctrine of equivalence.

71.    Likewise, at least because there is no direct infringement, Hanover does not induce infringement of the '584 Patent or otherwise contribute to infringement of the '584 Patent.

72.    Pursuant to the Federal Declaratory Judgment Act, 27 U.S.C. § 2201 et seq., Hanover seeks a declaration that Hanover (including through its use of the Second Accused System) does not infringe the '584 Patent.

### COUNT III: NON-INFRINGEMENT OF THE '894 PATENT

73.    Hanover repeats and realleges the allegations set forth above.

74.    The IV defendants have alleged that IV requires Hanover to license its intellectual property portfolio, including the '584 Patent, and intends to file suit against Hanover if Hanover does not obtain a license.

75.    The IV defendants have alleged that the third-party, open-source software "Apache Kafka" (the "Third Accused System") infringes at least claim 8 of the '894 Patent.

76.    As a result, there is an actual, justiciable, substantial, and immediate controversy between Hanover and IV regarding whether Hanover has infringed and/or continues to infringe

the '894 Patent.

77.     Hanover does not make, use, offer to sell, or sell any product and or/system within the United States (including the Third Accused System), or import into the United States any product and/or system (including the Third Accused System) in a manner which infringes the '894 Patent.

78.     As such, Hanover does not directly infringe any valid or enforceable claim of the '894 Patent, either literally or under the doctrine of equivalence.

79.     Likewise, at least because there is no direct infringement, Hanover does not induce infringement of the '894 Patent or otherwise contribute to infringement of the '894 Patent.

80.     Pursuant to the Federal Declaratory Judgment Act, 27 U.S.C. § 2201 et seq., Hanover seeks a declaration that Hanover (including through its use of the Third Accused System) does not infringe the '894 Patent.

## JURY DEMAND

Hanover hereby demands a trial by jury on all claims so triable.

## RELIEF REQUESTED

WHEREFORE, Hanover respectfully requests a declaratory judgement against IV as follows:

A.  A declaration that Hanover does not infringe any valid and enforceable claim of the '844 Patent;

B.  A declaration that Hanover does not infringe any valid and enforceable claim of the '584 Patent;

C.  A declaration that Hanover does not infringe any valid and enforceable claim of the '894 Patent;

D.  A declaration that this case is exceptional within the meaning of 35 U.S.C. § 285, thereby

- 16 -

entitling Hanover to a recovery of its costs including reasonable attorneys' fees under 35 U.S.C. § 285 and all other applicable statutes, rules, and common law, including this Court's inherent authority;

E.   Declaring that judgment be entered in favor of Hanover, and against IV on Hanover's claims;

F.   An order enjoining IV and those in privity with IV from asserting the '884, '584, and '894 Patents against Hanover and Hanover's representatives, agents, affiliates, subsidiaries, vendors, and customers; and

G.   Such other equitable and/or legal relief as this Court or a jury may deem proper and just under the circumstances.

Respectfully submitted,

THE HANOVER INSURANCE GROUP, INC.
AND THE HANOVER INSURANCE COMPANY

By their counsel,

*/s/ John J. Cotter*
John J. Cotter (BBO # 554524)
john.cotter@klgates.com
Joshua Andrews (BBO # 712794)
Joshua.andrews@klgates.com
K&L GATES LLP
One Congress Street, Suite 2900
Boston, MA 02114
Tel: (617) 261-3100
Fax: (617) 261-3175

Dated: April 7, 2026

- 17 -